IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP WILKINS, a minor by his parent and natural guardian Paula Wilkins, et al., Plaintiffs, v. CITY OF PHILADELPHIA, et al., Defendants. | : : : : : : : : : | CIVIL ACTION NO. 16-5926 |

Jones, II   J.                                                                                                           July 31, 2017

## MEMORANDUM

Phillip Wilkins, an African-American minor, and his guardian, Paula Wilkins, are suing the City of Philadelphia, and individual members of the police and fire departments, pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986, for alleged constitutional violations and related state-law claims.[1]  Primarily, Plaintiffs contend that Defendants denied Phillip Wilkins emergency medical care, in part because of his race, in violation of the substantive due process and equal protection guarantees of the Fourteenth Amendment of the U.S. Constitution.  Defendants moved to dismiss the Complaint under Federal Rule 12(b)(6).  Because the Complaint has pleaded insufficient facts to sustain any of the federal claims, the motion is granted and the Complaint is dismissed in its entirety with leave to amend.

### STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by

---

[1] Plaintiff's first name is spelled as both "Philip" and "Phillip" in his pleadings. This memorandum adopts the spelling used in the Complaint's caption.

1

mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**FACTUAL ALLEGATIONS**

On the Fourth of July of 2015, Phillip Wilkins, an African-American teenager, grabbed an ignited "Roman Candle type sparkler" from a young boy on a sidewalk around Third and Nedro Avenue in North Philadelphia, a predominantly African-American neighborhood. Compl. ¶¶ 1, 8, 11-13, 26.[2] The firework exploded, partially severing Wilkins' right hand. *Id*. at ¶ 13. Wilkins and a friend rushed to a nearby neighbor's home for help and Wilkins received a towel to wrap the injury. *Id*. at ¶ 14. Wilkins' friend used his belt to create a tourniquet. *Id.*

Responding to a 911 call, Philadelphia Police Officers Michael Kilroy and Joseph Reiber, two of the defendants, arrived at the scene around 10:46 p.m. *Id*. at ¶¶ 15, 16, 22. After they arrived, they allegedly refused to transport Wilkins to a medical facility, said they were not responsible for his care, and "abandoned" him on the sidewalk. *Id*. at ¶ 16. Kilroy and Reiber prepared an incident report declaring Wilkins "uncooperative." *Id*. at ¶ 22.

Firefighter Saleem Sanders and Lieutenant Bernard P. Gilliam, also co-defendants, arrived shortly after Kilroy and Reiber (together, the "Individual Defendants"). *Id*. at ¶¶ 20, 21.

---
[2] The Complaint's paragraphs are misnumbered, but the citations herein reflect the corrected numbering.

Allegedly, Sanders and Gilliam also refused to administer emergency care or provide medical transportation to Wilkins. *Id*. at ¶ 21. A report prepared by Sanders, and approved by Gilliam, stated: "Person went POV, which stands for "privately owned vehicle." *Id*. at ¶ 20.

The same neighbor who gave Wilkins the towel to wrap his hand also drove him to Albert Einstein Medical Center. *Id*. at ¶ 17. Wilkins was later transferred to St. Christopher's hospital. *Id*. at ¶ 18. Doctors initially expected to amputate Wilkins' hand, but they were able to salvage "what was left" of it in surgery. *Id*. Wilkins spent a week in the hospital and required at least two additional surgeries. *Id*. at ¶¶ 18, 19.

Plaintiffs believe that the Individual Defendants' conduct, as well as the City of Philadelphia's failure to properly train and supervise members of the police and fire departments, "was motivated, in part, by racial bias and animus." *Id*. at ¶ 28. He alleges the City maintains "an official policy which has encouraged, tolerated, ratified, and been deliberately indifferent" to several patterns, practices, and customs that led to the deprivation of his constitutional rights. *Id*. at ¶¶ 24, 28.

To vindicate those rights, Plaintiffs assert four counts: one against the City and three against the Individual Defendants in their personal capacity. Count One claims the City is liable for the Individual Defendants' allegedly unconstitutional acts. *Id*. at ¶ 34. Count Two alleges violations of section 1983 arising from the alleged deprivation of Wilkins' constitutional rights. *Id*. at ¶ 35. Count Three claims violations of section 1985 arising from an alleged conspiracy among the Individual Defendants to deprive him of those rights. *Id*. at ¶ 38. And Count Four alleges violations of section 1986, arising from the Individual Defendants' alleged failure to prevent the section 1985 conspiracy. *Id*. at ¶ 40.

**DISCUSSION**

The Complaint lacks sufficient factual allegations to state any federal claims against Defendants and is therefore dismissed with leave to amend.

**I.       The Complaint Fails to State a Section 1983 Claim**

The analysis begins with the gravamen of the Complaint: the section 1983 claims. To state a claim under this statute, a plaintiff must establish that a person acting under the color of state law deprived him of a constitutional or federal statutory right. *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (en banc) (McKee, C.J.). Plaintiffs claim Defendants deprived Wilkins of his due process right to be free from state-created danger, and his equal protection right to be free from race-based discrimination in the provision of rescue services, under the Fourteenth Amendment. *See* Pls.' Resp. 13, ECF No. 9. Each claim is addressed in turn.

**A.  Wilkins' Due Process Claim Is Insufficiently Pleaded**

The Due Process Clause of the Fourteenth Amendment confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989) (concluding that the state was not constitutionally obligated to protect a child from his abusive father). "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide" those services, including rescue services. *Brown v. Commonwealth of Pennsylvania*, 318 F.3d 473, 477 (3d Cir. 2003) (quoting *DeShaney,* 489 U.S. at 196-97).

An exception to this general rule applies "when the state, through its affirmative conduct, creates or enhances a danger for the individual." *Id*. at 478 (citing *DeShaney*, 489 U.S. at 201).

For this "state-created danger" exception to apply, a plaintiff must show, *inter alia*, that "a state actor *affirmatively* used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (emphasis added).

To give rise to state-created danger, the requisite affirmative acts must impose limits on an individual's ability to care for him or herself, or access outside support. *See, e.g.*, *Brown*, 318 F.3d at 481 (holding that delayed rescue services, without more, did not constitute deprivation of liberty under Due Process clause); *Badway v. City of Phila.,* 415 F. App'x 420, 421 (3d Cir. 2011) (same); *Perez v. City of Phila.*, 701 F. Supp. 2d 658, 670 (E.D. Pa. 2010) (dismissing state-created danger claim arising from flawed 911 response because plaintiff did not "allege a physical interaction with the state that limited her freedom of action"); *Lamey v. Northumberland Cty.*, No. 13-cv-00379, 2014 U.S. Dist. LEXIS 32866, at *12-13 (M.D. Pa. Jan. 22, 2014) (holding that reliance on delayed rescue services, by itself, did not limit the decedent's or her family's ability to pursue other options); *cf. Rivas v. City of Passaic*, 365 F. 3d 181, 196 (3d Cir. 2004) (finding adequate state-created danger claim where emergency responders let police officers take over the accident scene and restrain the patient face down on a stretcher, causing the patient to suffocate and die).

In contrast, the Complaint recites a litany of refusals, but fails to allege any *affirmative* acts. It alleges, for example, that Kilroy and Reiber "refused to transport" Wilkins to a hospital or other medical facility. Compl. ¶ 16. Sanders and Gilliam also "refused emergency care" and transportation services to Wilkins. *Id*. at ¶ 21. And Defendants "did nothing to facilitate" Wilkins' transportation to a medical facility. *Id.* at ¶ 21. These omissions are not affirmative acts and cannot give rise to a state-created danger claim because, as cases like *Brown* make clear,

5

the state has no constitutional obligation to provide rescue services in the first place. 318 F.3d at 481. A state-created danger claim based on a refusal to provide emergency services, or a misplaced reliance on rescue services alone, would "swallow the rule." *Morrow*, 719 F.3d at 178.

Plaintiffs unsuccessfully attempt to reframe the responders' conduct as affirmative acts. The Complaint alleges that the Individual Defendants "abandoned" him on the sidewalk and "deliberately [left] Mr. Wilkins bleeding out on the pavement." Pls.' Resp. at 11. But "merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct," especially where the state actors did not create the original danger that injured the plaintiff. *Morrow*, 719 F.3d at179.

Plaintiffs rely on *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), to argue that, even though Defendants "did not create the condition" that led to Wilkin's injury, they still rendered him more vulnerable to harm. Pls.' Resp. at 12. In *Kneipp*, police officers detained a couple, Joseph and Samantha, on a public street following a public disturbance call. 95 F.3d at 1201. Samantha was so intoxicated that she smelled of urine and could not walk without assistance. During the course of the roadside detention, the officers allowed Joseph to walk home alone to relieve a babysitter. The officers detained Samantha further, however, and later sent her off on her own. *Id*. at 1202. On her way home, Samantha fell to the bottom of an embankment, suffering hypothermia and permanent brain damage. *Id.* at 1203. In reversing summary judgment for the state, the *Kneipp* court found that the police had affirmatively created a dangerous situation that made Samantha more vulnerable to harm than had they not intervened. *Id.* at 1209. But the Third Circuit has since clarified that, in *Kneipp*, it was the police officers' affirmative acts of "intervening, detaining, and then releasing" Samantha into the night—thereby

cutting her off from assistance and exposing her to new danger—that constituted the state-created danger. *Brown*, 456 F. App'x at 92.

Here, the Individual Defendants did not keep anyone else from helping Wilkins. To the contrary, Plaintiffs' own pleadings show that Wilkins *did* receive care notwithstanding the Individual Defendants' alleged inaction: Wilkins received help from his friend and neighbor, accepted a ride to a hospital in a private vehicle, and obtained medical treatment from two hospitals. Compl. ¶¶ 14, 17, 18. Moreover, Defendants did not send Wilkins "straight to the clutches" of some danger, "as the officers did when they sent Kneipp into the cold night air." *Brown*, 456 F. App'x at 92. Plaintiff argues that the Defendants "engaged" Wilkins after responding to the 911 call. Pls.' Reply at 11-13. But the Complaint does not allege facts that show how, or for how long, Defendants "engaged" him so as to infer that they imposed a restraint on his ability to receive more immediate care. The only inference arising from the facts as pleaded is that the Individual Defendants arrived on the scene and did nothing. The Complaint does not state a due process claim.

### B. The Complaint Does Not Set out an Equal Protection Claim

Although the Constitution does not guarantee protective services, equal protection *does* entitle Wilkins to receive whatever services the City provides "on the same terms as his neighbors, without distinctions based on … skin color." *Burnett v. Springfield Twp.*, No. 13-1646, 2014 U.S. Dist. LEXIS 92216, at *10 (E.D. Pa. July 8, 2014) (Restrepo, J.) (citing *DeShaney*, 489 U.S. 189, 197 n. 3 ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.")); *see also Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("There is a constitutional right ... to have police services administered in a nondiscriminatory manner."); *Watson v. City of*

*Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988) (if the state provides protective services, "it is prohibited from irrational discrimination in providing such protection.").

The Complaint as pleaded, however, does not support an equal protection claim. To survive a 12(b)(6) motion, a complaint must allege facts to establish that the plaintiff is "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class.'" *Raven v. City of Phila*., No. 15-4146, 2016 U.S. Dist. LEXIS 9274, at *16-17 (E.D. Pa. Jan. 26, 2016) (quoting *Green v. Chester Upland Sch. Dist*., 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist*., 655 Fed. App'x. 125 (3d Cir. 2016) (citations omitted)). An equal protection claim must also allege the existence of "purposeful discrimination." *Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 273 (3d Cir. 2014). Purposeful discrimination requires facts showing a discriminatory state of mind. *Iqbal*, 556 U.S. at 680-83. "Allegations about other people's mental states are conclusory unless they are linked to facts from which the relevant mental state might be inferred." *Burnett*, 2014 LEXIS 92216, at *18 (citing *Twombly*, 550 U.S. at 554-55).

Defendants do not dispute that Wilkins, an African-American minor, is a member of a protected class, similarly situated to members of an unprotected class. Wilkins' equal protection claim fails, however, because he alleges no facts to establish that he was treated differently or that he was treated differently *because of* his race. The Complaint merely states, in a conclusory manner, that the Individual Defendants' actions and the City's failure to "properly train and supervise the activities of the individual police officers and fire department members [were] motivated, in part, by racial bias and animus." Compl. ¶ 28. This is not enough. *See Burnett*, 2014 LEXIS 92216, at *18 (dismissing discrimination claim because complaint did not "contain

any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind") (quoting *Iqbal,* 556 U.S. at 680-83).

Plaintiffs may very well be right that Defendants might have responded differently had the incident occurred in a more affluent, white neighborhood. Pls.' Resp. at 10. But that statement is speculative and conclusory unless supported by factual allegations in the Complaint. *See Burnett*, 2014 LEXIS 92216, at *20 ("A hypothetical, regardless of its accuracy, is not a fact sufficient to support a legal claim."). Wilkins urges this Court to "look at the prevalence of violence and misfortune suffered by black men at the hands of law enforcement officials, in this country today." Pls.' Resp. at 10. But Defendants' intent cannot be inferred solely on the basis of generalizations about the state of relations between African Americans and the police, especially since the Complaint does not allege any facts about those relations in Philadelphia. In short, Plaintiffs fail to allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Burnett*, 2014 LEXIS 92216, at *21 (quoting *Twombly*, 550 U.S. at 547).

## II. The Complaint's Allegations Do Not Implicate Municipal Liability

Because Plaintiffs did not sufficiently allege an underlying constitutional violation, there can be no municipal liability. Regardless, that claim also fails on other grounds.

To implicate municipal liability under section 1983, a plaintiff must demonstrate that the municipality, through a policy or custom, caused the constitutional violation. *Knellinger v. York St. Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *see Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984). Policy emerges when an authorized decisionmaker "issues an official proclamation, policy or edict." *Knellinger*, 57 F. Supp. 3d at 471. "A course of conduct is

considered a custom when, though not authorized by law, officials' practices are so permanent and well-settled as to virtually constitute law." *Id.* at 471-72.

Failure to train can be a policy or custom triggering municipal liability, if such failure demonstrates deliberate indifference to the constitutional rights "of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir.1999) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)). A failure to train evinces deliberate indifference "if in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Wilkins fails to allege that the City has a policy or custom that violated his constitutional rights. The Complaint simply asserts that the City maintains "an official policy" that has "encouraged, tolerated, ratified, and been deliberately indifferent" to the need for more or different training, supervision, and investigation of its emergency response procedures. Compl. ¶ 24. This bald assertion, absent supporting factual allegations in the Complaint, does not sufficiently establish a policy or custom. The Complaint also lacks any factual allegations regarding training or supervision of the City's emergency responders, only conclusory statements that the failure to train caused the alleged constitutional deprivation. Further, even if a policy or custom were sufficiently pleaded, Plaintiffs fail to single out a decisionmaker responsible for the allegedly unconstitutional policy.

Plaintiffs argue that the City, through reports created *after* the incident, was on notice of the deficiencies in its policies and "did nothing to better train" its agents to prevent similar

10

incidents. Pl's Resp. at 14-15. However, those allegations, "at most, show the City's inaction in one instance, which definitionally does not constitute a custom or policy." *Knellinger,* 57 F. Supp. 3d at 472 (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir.1995)). The Complaint does not state a claim for municipal liability under section 1983.

### III. The Section 1985(3) Claims Do Not Survive a 12(b)(6) Motion

Claims under section 1985(3) are also insufficiently pleaded. To state a claim for the violation of that statute, a plaintiff must allege facts that plausibly show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir.2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828-29 (1983)). To show a conspiracy, "a complaint must allege specific facts suggesting there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Aultman v. Padgett*, No. 03-3261, 2003 U.S. Dist. LEXIS 18119, at *14 (E.D. Pa. Sep. 9, 2003).

Plaintiffs have not pleaded a conspiracy. The Complaint merely avers that "Kilroy, Reiber, Sanders and Gilliam, by their conduct have conspired to interfere with Wilkin's Civil Rights [*sic*]." Comp. ¶ 37. Plaintiffs argue that Kilroy's and Reiber's refusal to transport Wilkins to the hospital, and their decision to abandon him on the sidewalk, are sufficient to show a conspiracy under Section 1985(3). Pls.' Resp. at 13-15. But the facts alleged do not give rise to the inference that Defendants reached a "mutual understanding" to deprive Wilkins of his constitutional rights, only that they individually refused to care for him. Furthermore, Plaintiffs' failure to allege facts giving rise to an inference of discriminatory animus also defeats the

11

conspiracy claim. *See Aultman*, 2003 U.S. Dist. LEXIS 18119, at *14 ("Plaintiff[s] must also allege specific facts showing invidious, purposeful, and intentional discrimination.") (relying on *Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir.1972).

Plaintiffs have not stated a claim under section 1985(3).

## IV. The Complaint Lacks Allegations to Support a Section 1986 Claim

Because Plaintiffs failed to adequately plead a claim under section 1985, the section 1986 claim necessarily falls. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (holding that recovery under section 1986 requires a predicate violation of section 1985).

## V. Pendent State Law Claims

Plaintiffs' state-law negligence claims derive from the same "nucleus of operative fact" as his federal claims; hence, they are part of the same case or controversy as the claims over which this Court has original jurisdiction. *See Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 911 (3d Cir. 1984) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). However, because this Court is dismissing the federal claims without prejudice, and because neither party has briefed the related state claims, it is more efficient to decline supplemental jurisdiction over the state claims at this time. *See id*. (courts must weigh "considerations of judicial economy, convenience and fairness to [the] litigants" in deciding whether to assume jurisdiction over pendent state claims) (quoting *United Mine Workers*, 383 U.S. at 726); *see also Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999) (a district court may decline supplemental jurisdiction over related state claims if it "has dismissed all claims over which it has original jurisdiction."). Accordingly, the state law claims are also dismissed without prejudice.

## CONCLUSION

The Complaint is dismissed in its entirety for failure to sufficiently allege any federal claim. Because allowing a curative amendment would not necessarily be futile or inequitable, Plaintiffs are granted leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II   J.